[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action to dissolve a twenty four year marriage. The parties separated in the spring of 2001 and the dissolution complaint was filed in October of 2001. The wife and plaintiff, Patricia Fitzgibbons, is partially employed at present — she has only recently returned to the work force. The husband and defendant, John Fitzgibbons is fully employed as a business executive. The parties have two children issue of the marriage — one of whom is a minor at this time. Both parties have appeared by counsel. Trial of all disputed issues was held on September 18, 2002 and September 20, 2002.
The court, after hearing the evidence and reviewing the exhibits, makes the following findings.
The plaintiff, whose maiden name was Patricia A. Beauregard and the defendant John Fitzgibbons were married on May 20, 1978 in Worcester, Massachusetts.
The plaintiff has resided continuously in Dayville, Connecticut for at least one year preceding the date of the filing of the complaint for dissolution of the marriage and other relief.
There have been two children issue of this marriage, only one of whom is a minor at this time but both of whom are the subject of the post majority education agreement of the parties. Their names are Jaclyn Fitzgibbons born October 23, 1985 and Ryan Fitzgibbons born August 4, 1982. No other children have been born to the defendant since the date of the marriage. Neither party is receiving assistance from the State of Connecticut or any town or municipality.
The court finds that the marriage of the parties has irretrievably broken down.
The Fitzgibbons have reached an agreement with regard to the support CT Page 13121 and custody of their minor child, Jaclyn. The parties have further submitted to the court a written agreement regarding the payment for the college education of both of their children — Jaclyn and Ryan. The parties have been unable to reach agreements with regard to alimony, property distribution, responsibility for the payment of certain liabilities, and the maintenance of medical and dental insurance for the wife. The court will briefly summarize the salient facts found from the testimony of the parties and a review of the exhibits admitted into evidence.
The plaintiff and the defendant met in Worcester, Massachusetts. At the time of their marriage in 1978 both parties were in their early twenties. Mr. Fitzgibbons is currently 48 years old and Mrs. Fitzgibbons is 46 years old. After their marriage they resided in Massachusetts until 1989 when they relocated to Dayville, Connecticut. From 1989 until April of 2001, the date of separation the parties resided in their home on 12 Deer Lake Road. The wife and the minor daughter continue to reside in those premises.
Prior to the birth of their first child, the wife, a high school graduate, held full time employment of a clerical or secretarial nature. She initially worked for a financial institution and then with a private company. She proved to be a valuable and capable employee. She was promoted to serve as a executive assistant in the Human Resources Department. After the birth of Ryan in 1982 the wife went back to work on a part time basis. She soon stopped working on a part time basis because she wished, with her husbands agreement, to stay home with their child. She did not seek employment outside of the house until April 2001. She recently was hired on a part time basis as a Customer Service Representative for the Savings Bank of Manchester. In order to increase her employability Mrs. Fitzgibbons has taken courses at Quinebaug Community College during the past year.
Between 1978-1982 the husband was employed by manufacturing companies in the Worcester area. In addition to his full time employment the husband started his pursuit of a college education. He ultimately received degrees in industrial engineering and psychology. The husband's employment path as will be detailed below has taken him from the floor of the factory to the boardroom of the corporation that owns the factory.
As the husband progressed in his career the wife supported him and raised their children — Jaclyn being born in 1985. In the mid 1980's the husband was employed by Astro Wire and Cable in Worcester as the manager of Industrial Engineering and Assistant to the President. It was during this time that he completed his degree in industrial CT Page 13122 engineering. Mr. Fitzgibbons left Astro in 1988 and became Vice President of operations with CM Wire and Cable Company of Connecticut. At this time the family relocated to the current family home on 12 Deer Court, Dayville, Connecticut.
Mr. Fitzgibbons career with CM brought him additional advancement and responsibilities. In 1992-3 he was assigned the responsibility of managing a CM asset in Ireland. The family moved to Ireland for a period of about eighteen months. Eventually the Fitzgibbons family returned to their home in Dayville, Connecticut. Upon his return home, Mr. Fitzgibbons was named President of the Cable division of CM. Due to disputes with the owners of the CM company Mr. Fitzgibbons left that company to start up his own consulting business in 1998.
Each career move by Mr. Fitzgibbons brought him a higher salary and more responsibilities. His salary levels increased from of $45,000.00 in 1989 to almost $184,000 in 1998.
Mr. Fitzgibbons consulting business was very successful, earning in excess of $360,000.00 in 2000, but short lived. Based upon his determination of an adverse business climate he accepted the position of President of JPM corporation in 2000. JPM, which had its headquarters in Pittsburgh, Pa, was experiencing significant financial difficulties and it brought in Mr. Fitzgibbons to return the company to profitability. Initially the Fitzgibbons family contemplated relocating to Pittsburgh but this plan changed because of the financial condition of the company was much worse than had been initially disclosed to Mr. Fitzgibbons. The job was more complex, more demanding and more stressful than any job Mr. Fitzgibbons had held. It involved a significant amount of travel and confrontation. Because of the financial condition of the company and pressure from financial institutions, the business strategy of JPM was to sell off components of the company. One of the significant and troubled assets of the corporation was a manufacturing facility in Mexico. The Mexican facility had operational issues that required Mr. Fitzgibbons personal attention. Eventually Mr. Fitzgibbons spent much of his time in Mexico. Through various corporate and financial peregrinations Mr. Fitzgibbons ceased his employment with JPM and became General Manager of Electronica Pantera S.A. De C.V. of Zapopan, Jalisco, Mexico. He is presently earning a salary of $200,000.00 per year and has an "Earn Out Agreement" with the company which may, if certain goals are met, entitle him to a twenty five (25) percent ownership interest in the company.
The parties have worked at their marital relationship. Each of the parties brought into the relationship issues which would tax the relationship. Prior to the marriage the wife had been diagnosed and CT Page 13123 treated for an Obsessive Compulsive Disorder (OCD). The husband was aware of and undeterred by this diagnosis. He described his wife as "confident, outgoing and having a high energy level." Both the husband and the wife were the children of an alcoholics. At one time the husband felt he was an alcoholic but presently does not believe that he is. The wife is adamant against drinking.
Several times during the course of the marriage the parties engaged in individual or couples counseling. They actively participated in the "Marriage Encounters" program for a period of several years. These counseling efforts bespeak the effort that each party has put into maintaining and preserving the marital relationship. Mrs. Fitzgibbons testified that even though she had filed this action for dissolution she still believed that the marriage could be saved. She believes that her marriage vows were a commitment for life. Mr. Fitzgibbons testified, with visible sadness, that he felt the marriage had broken down irretrievably. He testified that during the last years he has "felt alone when he was traveling on business and he felt alone when he was home." He felt he could not share his concerns and stresses associated with his job with his wife.
During the marriage each party has developed health issues which they must continue to monitor and address. While the parties were living in Ireland in 1994 the wife required surgery on her back. She has permanent limitations associated with this injury. The husband suffered a heart attack in 1994 at age forty. There is a history of significant heart disease in his family. Further the husband was recently diagnosed as having Hepatitis C. While each of these conditions are quiescent at this time they remain a concern in the future for each of the parties. Both parties are physically and mentally able to be employed on a full time basis within their limitations.
A review of the financial affidavits, the testimony of the parties and the exhibits reveals a high stream of income but relatively few accumulated assets. The Husband reports an net income, after payment of Mexican income and social taxes of $2,642.35 per week. The wife has net earnings, excluding alimony and child support, of $193.00 weekly. After the separation of the couple in April of 2001 the defendant voluntarily paid the wife weekly support in the amount of $2000.00 per week. During the pendency of this action the court modified the monetary support to the sum of $1,500.00 per week. In addition to these payments to the wife, the husband has provided support directly to or paid bills of his children in the approximate amount of eighteen thousand dollars.
The financial affidavits reveal that the wife claims weekly expenses, CT Page 13124 including expenses for the adult child of $1,866.00 per week. The husband's affidavit claims weekly expenses, excluding court ordered alimony and support, of $1,870.18. The combined claimed expenses exceed the combined claimed net income of the parties by approximately $900.00 per week.
The Wife's financial affidavit does not show any liabilities. The Husband claims that since the separation he has incurred over fifty thousand dollars of credit card liabilities. He now lists liabilities of almost eighty two thousand dollars and weekly payments of approximately $650.00 on these liabilities.
The net assets of the parties, before deducting credit card liabilities totals in round figures $265,000.00. The sole joint asset of significant value is the parties home in Dayville, Connecticut which has an appraised value of $231,000.00 and has equity of $148,598.00. The Husband has 401K accounts which have a value of approximately $85,000.00 and savings accounts in the amount of $12,500.00. The wife has savings accounts of approximately $19,000.00. The court's net asset figures do not include furnishings, personal property and motor vehicles. When the credit card liabilities are subtracted, excluding the American Express debt on the husband' financial affidavit, is approximately $213,000.00. If the American Express account liability is deducted the net assets of the parties is approximately $185,000. The court has not included as a liability a car loan of $50,000.00 that the husband has received from his employer. He indicated that his liability on the loan would probably be a subject of future negotiations with his employer.
It is clear to the court that the family has been incurred a substantial amount of debt in order to support the family during the pendency of this case. The testimony of the husband is that a substantial portion of this credit card debt has been incurred since April 2001.
The court has reviewed the evidence in this case in light of all the pertinent criteria outlined in chapter 815j of the Connecticut General Statutes. It also has considered the defendants written agreement that he alone will be responsible for the college education expenses, within limits, for the two children issue of this marriage. The court finds that the following orders are fair and equitable:
1. The marriage of the parties is dissolved on the ground of an irretrievable breakdown;
2. The parties shall have joint legal custody of their minor child. The Plaintiff shall primary physical custody. The defendant shall have CT Page 13125 reasonable rights of visitation as agreed upon by the parties.
3. The defendant shall pay the amount of $450.00 per week in child support for the minor child, with a contingent wage execution, which award is substantially in accordance with the child support guidelines. In accordance with section 46b-84 of the General Statutes the support obligation shall continue while the minor child resides with a parent, is a full time high school student and has not reached the age of nineteen. The defendant shall maintain health and dental insurance for the minor child. All uninsured or unreimbursed health related expenses attributed to the minor child, including medical, dental, prescriptive, ophthalmologic, orthodontic, psychiatric, psychological or therapeutic expenses and co-pays for the minor child shall be split evenly between the parties. The parties shall exchange all insurance cards or documents necessary to effectuate the terms of this order. The provisions of Section 46b-84 (e) of the Connecticut General Statutes shall apply.
4. The defendant, in accordance with the written stipulation of the parties, shall be responsible for payment of the college education expenses for both children issue of the marriage. The Stipulation Concerning Payment of College Education Expenses is incorporated into and made a part of this decision.
5. The defendant shall maintain medical and dental insurance, either through COBRA, if available or otherwise, which is substantially equivalent to the present coverage for the benefit of the plaintiff for a period of Thirty six (36) months from the date of judgment, with the defendant being responsible for the cost of said insurance. The defendant shall provide the plaintiff with evidence on at least an annual basis of his cost for the wife's insurance and for the insurance for their children. If the plaintiff becomes eligible for medical and dental insurance for herself and her children through her employment and (1.) said insurance is substantially equivalent to the then existing coverage provided by the defendant; and (2.) if the employee contribution required, if any, is less that what the defendant is paying to insure the plaintiff and the children, then she shall obtain said insurance and notify the defendant. For the balance of thirty six month period, the defendant shall reimburse the plaintiff an amount equal to (1.) her employee contribution and (2.) one third of his net savings for the insurance coverage.
6. The defendant shall pay to the plaintiff $1,050.00 per week as periodic alimony until child support terminates. The defendant shall pay to the plaintiff $1,225.00 per week as periodic alimony thereafter until the plaintiff reaches the age of 64, at which time the plaintiff CT Page 13126 qualifies for social security under the defendants earnings. Said alimony shall be nonmodifiable as to amount except that the defendant shall have the right to seek modification of said alimony in the case of his subsequent disability or catastrophic illness affecting his earnings ability. Said alimony shall be non-modifiable as to duration except that said alimony shall terminate upon the following: cohabitation or remarriage by the plaintiff or the death of either party. In the event that the defendant does not receive a tax benefit from the payment of alimony, the alimony received by the plaintiff shall not be taxable to the wife unless it is determined to be taxable to the wife by the Internal Revenue Service.
7. The defendant shall maintain in full force and effect, at his expense, a life insurance policy on his life in the amount of Two Hundred Thousand ($200,000.00) dollars with the plaintiff as the primary beneficiary until the earlier of the following: the plaintiff reaches the age of 64 when periodic alimony is scheduled to terminate, or the termination of said alimony as a result of or cohabitation or remarriage of the plaintiff or the death of either party. The defendant shall provide evidence or insurance on a yearly basis.
8. The defendant shall quit-claim to the plaintiff all of his right, title and interest in and to the marital premises located at 12 Deer Court, Dayville, Connecticut, within ten (10) days of the judgment. The defendant shall waive any and all claims to the equity therein. The plaintiff shall be responsible for and pay all expenses, including but not limited to mortgages, taxes and insurances connected to said premises, and indemnify and hold the defendant harmless from the same.
9. The defendant shall retain his interest in the 401k retirement plans and the bank accounts listed on his financial affidavit. The plaintiff shall waive all claims and interests therein. The plaintiff shall retain her interest in all bank accounts listed on her financial affidavit and the defendant shall waive all claims and interest therein.
10. The parties shall retain the personal property currently in their possession. Each shall retain the automobiles now in their possession and they shall be solely responsible for the payment of taxes, insurance and indebtedness thereon.
11. The defendant shall transfer all of his interest and title to the 2000 Ford Mustang to the plaintiff. This car is currently used by the minor children. The defendant and the plaintiff shall be equally responsible for any loan payments due on the Mustang. The defendant shall pay to the plaintiff on a monthly basis an amount equal to one half of the CT Page 13127 monthly loan payment. The plaintiff shall be responsible for the transmission of the loan payment to the credit issuer. The plaintiff shall be responsible for the taxes and insurance thereon. The plaintiff shall provide the defendant with evidence of the insurance.
12. The defendant is currently party to an "Earn Out Agreement" with Electronica Pantera, SA. de C.V. The agreement is dated December 18, 2001 and was offered as Defendant's Exhibit 1 at trial. The plaintiff shall be entitled to twenty (20) percent of all compensation to the defendant derived directly from said agreement. Said payment to the plaintiff shall be made within thirty days of the date that the funds are received by the defendant. The Defendant shall provide to the plaintiff on a quarterly basis copies of the audited earning statement and a balance sheet for Electronica Pantera.
13. Except as specifically referenced above, each party shall be responsible for the debts as shown on their respective financial affidavits, and hold the other party harmless and indemnify them thereon.
14. The plaintiff shall prepare and file a judgment file within thirty days.
Cosgrove, J. CT Page 13128
CT Page 13128